**Roger Lee SAWYERS, Petitioner–Appellant,**

v.

**STATE of Tennessee, Respondent–Appellee.**

Supreme Court of Tennessee, at Knoxville.

July 29, 1991.

James G. Thomas, Edmund L. Carey, Jr., Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Amy L. Tarkington and C. Anthony Daughtrey, Asst. Attys. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Justice.

In this post-conviction proceeding, we are asked to determine whether relief should be granted to a defendant who was actually a juvenile at the time of the offense, but who was not afforded a transfer hearing in juvenile court prior to his conviction in criminal court, because neither he nor the state knew that he was underage. The petitioner, Roger Lee Sawyers, was mistakenly indicted as an adult in February 1978 and, ignorant of his actual birth date, did nothing to correct the mistake. Indeed, he compounded it by misstating his age in criminal court in April 1978, at the time he entered guilty pleas to first degree murder, armed robbery, and grand larceny. When the error was discovered in 1986, eight years after the conviction became final, Sawyers filed this post-conviction action, contending that his conviction is void because the criminal court lacked subject matter jurisdiction over him. The state argued in response that the question is not one of subject matter jurisdiction but of the criminal court's personal jurisdiction over the petitioner. The state also contended

that this issue is not subject to collateral attack.

The trial court held that the question of Sawyers's entitlement to a transfer hearing had been waived, under the peculiar facts set out more fully below. The Court of Criminal Appeals disagreed with the trial court's analysis, based on the well-recognized proposition that subject matter jurisdiction cannot be conferred by waiver. The intermediate court affirmed the trial court's judgment, however, on the theory that, taken in context, the error in failing to provide Sawyers with a transfer hearing was harmless. On appeal to this Court, both the petitioner and the state agree that if subject matter jurisdiction is involved, the harmless error doctrine is inapplicable. Thus, neither side defends the analysis of the Court of Criminal Appeals. Nor can we. A court cannot commit "harmless error" in an action over which it has no jurisdiction in the first place. We therefore conclude that the intermediate court's reasoning cannot be sustained.

We conclude instead that subject matter jurisdiction is not implicated in this case. It is obvious, however, that the petitioner *has* suffered a procedural wrong, and we hold that due process requires a remand to determine the extent of prejudice caused by the state's failure to provide the petitioner with a transfer hearing.

The events giving rise to Sawyers's conviction occurred on December 16, 1976, but he was not arrested until January 1978, over a year later. Because his actual date of birth was May 17, 1959, Sawyers was only 17 years and seven months old at the time of the offense. He was just a few weeks shy of his 19th birthday when he appeared in criminal court and pleaded guilty on April 24, 1978.

He was at all times treated as an adult. Two appropriately zealous attorneys were appointed to represent him in the criminal court. They obtained psychological examinations of their client and fully investigated the charges against him. They also moved to suppress several incriminating statements that Sawyers had made to police at the time of his arrest, but after a suppression hearing, the trial court ruled that the confessions were admissible.

At the same time this case was being prosecuted, Sawyers was also under indictment and subject to the death penalty for a separate murder in another county. That offense had been committed after this one and after Sawyers became an adult. Trial counsel coordinated plea agreements in the two cases; the petitioner pleaded guilty in both counties; and he received concurrent life sentences.[1]

At the guilty plea proceeding in this case, the trial judge specifically asked Sawyers to give his age, and Sawyers responded that he was 20 years old. Sawyers must have known at the time he gave this answer that it was not entirely correct, for at a later post-conviction hearing,[2] he testified that his birth date was May 17, 1958, which would have made him only 19, not 20, at the time of the submission hearing in this case. What Sawyers apparently did *not* know was that his actual birth date was May 17, 1959, which meant that he was exactly a year younger than he thought he was. It also meant that he was a juvenile at the time of the offense, although not at the time of his arrest.[3]

Under T.C.A. § 37–1–103(a)(1), the juvenile court has "exclusive jurisdiction" over "proceedings in which a child is alleged to be delinquent." A 17–year–old child charged with murder or robbery may be tried as an adult, but only after a hearing in juvenile court and the entry of an order

---

1. The validity of the other murder conviction is not at issue here.

2. In 1981, Sawyers filed a post-conviction petition alleging ineffective assistance of counsel in connection with the entry of his guilty pleas in 1981. The trial court denied relief, and the judgment was affirmed by the Court of Criminal Appeals in an unreported opinion from which some of the facts recited in this opinion have been taken.

3. Sawyers's sincerity in making the mistake is supported by the record. His I.Q. was limited. His mother had died when he was pre-school age, and as a result, he had spent several years in a foster home. Apparently he and his family had simply lost track of his actual birth date.

of transfer to criminal or circuit court. T.C.A. § 37–1–134(d). Such an order must be predicated on a determination by the juvenile judge that there are "reasonable grounds" to believe that the child (a) committed the delinquent act alleged, (b) is not committable to an institution for the mentally ill or retarded, and (c) needs to be placed under "legal restraint or discipline" for the good of the community. T.C.A. § 37–1–134(a)(1).

The authority of the juvenile court to order a transfer under T.C.A. § 37–1–134, as well as the authority of the criminal court to accept transfer and try the juvenile as an adult, has been described in Tennessee decisions as "jurisdictional." In *Bomar v. State ex rel. Stewart*, 201 Tenn. 480, 300 S.W.2d 885 (1975), relied upon by the state in this case, the facts were similar to those here. The petitioner had misstated his age in the original proceedings; he was indicted as an adult and convicted of kidnapping and armed robbery. If his true age had been disclosed, the statutes then applicable would have required commencement of the prosecution in the juvenile court, and Stewart could have been transferred to criminal court for trial only upon a finding of "incorrigibility." *See* T.C.A. §§ 37–230 and 37–231 (1955).

After Stewart's conviction became final, he brought a habeas corpus proceeding to contest its validity. This court ultimately held that because the judgment was valid on its face, general principles of finality prevented the introduction of new evidence to establish the trial court's original lack of jurisdiction over the defendant.

The state would have us hold that review is similarly barred in this case. We conclude that the state's reliance on *Stewart* is misplaced, however, because of the intervening enactment of the Tennessee Post–Conviction Procedure Act in 1967. That statute was meant, in part, to loosen the strictures of the rules governing habeas corpus actions. It clearly permits the introduction of extrinsic evidence to establish the existence of a constitutional violation that makes an otherwise facially valid conviction unconstitutional and, therefore, invalid. T.C.A. § 40–30–105.

Hence, in *State v. Alley*, 594 S.W.2d 381 (Tenn.1980), we granted post-conviction relief to a petitioner who contended that he had been improperly transferred from juvenile court to circuit court and that the judgment of conviction in the latter court was void as a result. The petitioner relies heavily on *Alley* for the proposition that we should do likewise in this case, emphasizing our holding there that "[because Alley's] transfer was erroneous and improper ... the Circuit Court did not have subject matter jurisdiction ... [which made the] judgment a nullity and subject to direct and collateral attack." *Id.* at 382.

In citing *Alley* for the proposition that an error in juvenile transfer proceedings automatically deprives the criminal court of subject matter jurisdiction, the petitioner overlooks a crucial distinction between the two cases. Alley had been convicted in criminal court for an offense that occurred the day before his fifteenth birthday. The applicable statute made juveniles eligible for transfer to criminal court for offenses committed at "fifteen (15) or more years of age." The issue was whether Alley attained this age only upon his actual birthday, or, as the lower courts held by using common law rules of computation, on the day preceding his birthday. This Court looked to legislative intent and held that Alley did not become of age for purposes of the transfer statute until the day of his fifteenth birthday. The Court further held that because the offense occurred before that date, the criminal court had no jurisdiction to try Alley, and that his conviction was therefore invalid. Unlike this case, in *Alley* there was no allegation that the juvenile defendant had been deprived of a transfer hearing or provided with a deficient hearing. The dispositive point there was that no amount of proper procedure could bestow jurisdiction where none existed by statute. Because the criminal court that tried Alley clearly lacked any semblance of subject matter jurisdiction in that case, the resulting conviction could only be found to be void and set aside.

■ By contrast, the criminal court in this case clearly had authority to try Sawyers, had the proper transfer procedure been followed. Hence, the absence of a transfer order cannot be said to affect the court's subject matter jurisdiction, which, in a real sense, is concurrent with that of the juvenile court as to certain offenses committed by children falling within a specified age span. *See* Model Penal Code § 4.10 and Revised Comment (1985) (relationship of two courts with respect to persons whose age makes them eligible for trial as adults described as "a system of concurrent jurisdiction"). The only requirement, as noted above, is that such proceedings against a juvenile must originate in juvenile court. T.C.A. § 37–1–103.

Thus, it is inaccurate to describe the problem in this case as one of subject matter jurisdiction. Other courts, faced with similar fact situations, have analyzed the age of a juvenile defendant not as an element of subject matter jurisdiction, but as a fact entitling him or her to certain procedural rights. *See, e.g., Commonwealth v. Sims*, 379 Pa.Super. 252, 549 A.2d 1280 (1980), and cases cited therein. We find their reasoning to be consistent with Tennessee authority and wholly persuasive, at least as applied to those juveniles eligible by statute for transfer to criminal or circuit court.

■ The only remaining question is whether the procedural deficiency in this case has been waived, as the trial court held, or whether it can be said to constitute "harmless error," as the intermediate court held, or, finally, whether it must be the subject of affirmative relief.

■ In deciding, as we do today, that the absence of a valid transfer order is a procedural deficiency not affecting the subject matter jurisdiction of the convicting court, we do not wish to denigrate the significance of the procedural deprivation at issue here. The right involved, although created by statute, is sufficiently fundamental to be considered a matter of due process, in the context of juvenile justice. Consequently, where the error is raised at the first opportunity and there is no sug-

gestion of bad faith on the petitioner's part, it would be patently unfair to conclude that the issue has been "waived," as that term is contemplated by the post-conviction statutes, principally T.C.A. § 40–30–112(b). Moreover, under these facts, there has been no voluntary or knowing waiver of what we hold to be a fundamental procedural right. We thus reject the waiver imputed to the petitioner by the trial court's decision.

Nor do we find the intermediate court's result adequate to redress the wrong in this case. Without the aid of a more fully-developed record, we cannot conclude that the due process error in this case was harmless, beyond a reasonable doubt. It may be, as the Court of Criminal Appeals suggested, that remand in this case will prove to be a mere formality. But, as did the United States Supreme Court in remedying a similar defect in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we conclude that the case must be returned to the trial court for a *de novo* hearing to determine whether or not Sawyers would have been transferred from juvenile to criminal court, based on the facts existing at the time of his indictment and trial. If the trial court finds that transfer would have been appropriate, the petitioner's conviction, otherwise unassailed in the record before us, will be permitted to stand. If not, it must be vacated and the prosecution recommenced in juvenile court, as required by statute.

For the reasons set out above, we reverse the judgment of the Court of Criminal Appeals and remand the case to the trial court for further proceedings.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.